## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LORI MOECK**, in her capacity | : | **No. 3:13cv1305** |
| as parent and natural guardian | : | |
| of C.M. and A.M.; C.M., a minor; | : | **(Judge Munley)** |
| and A.M., a minor, | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PLEASANT VALLEY SCHOOL** | : | |
| **DISTRICT; DOUGLAS C.** | : | |
| **ARNOLD, Superintendent of** | : | |
| **Schools, Pleasant Valley School** | : | |
| **District; ANTHONY A. FADULE,** | : | |
| **Assistant Superintendent of** | : | |
| **Schools, Pleasant Valley School** | : | |
| **District; JOHN J. GRESS, Principal,** | : | |
| **Pleasant Valley School District;** | : | |
| **MARK GETZ, Wrestling Coach** | : | |
| **Pleasant Valley School District,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is the motion to dismiss plaintiffs'

Amended Complaint filed by Defendants Pleasant Valley School District,

Douglas C. Arnold, Anthony A. Fadule, and John J. Gress.  The matter

has been fully briefed and is ripe for disposition.

**Background[1]**

At all relevant times, C.M. (hereinafter "John Doe") and his sister

---

[1]This background section is merely a brief overview of the case.  We
will discuss the alleged facts more particularly below with citations to the
record where appropriate.

A.M. (hereinafter "Jane Doe")[2] were members of Defendant Pleasant Valley School District's high school wrestling team. Defendant Getz is the coach of the wrestling team, and the other individual defendants are school officials.

John Doe brings various causes of action relating to an incident that occurred on December 3, 2012. At that time, he weighed 145 pounds, and he was compelled by his wrestling coach to wrestle another student who weighed 220 pounds. The larger student threw Plaintiff John Doe through a pair of double doors. Then an argument and physical altercation occurred between John Doe and Defendant Getz. John Doe suffered injuries and was taken to the hospital.

Based upon these factual allegations, John Doe asserts various civil rights claims including the following: Count I, 42 U.S.C. § 1983, Fourteenth Amendment versus all defendants; Count II, 42 U.S.C. § 1983, State Created Danger versus all defendants; Count III, State Claim - Assault and Battery versus Defendant Getz; Count IV, State Claim - Intentional Infliction of Emotional Distress, versus Defendant Getz.

Plaintiff Jane Doe was also a member of the wrestling team. She asserts facts relating to a pattern of sexual harassment, misogynist insults

---

[2]Pursuant to Local Rule 5.2(d)(2), initials are used to identify the minor children. For clarity, however, we will adopt the defendants' practice of identifying the minor children as John Doe for the male student and Jane Doe for the female student.

and gender discrimination relating to her membership on the team. She asserts one cause of action, Count V, Title IX, Federal Claim, - Unequal Treatment versus the defendant school district. This cause of action is brought under Title IX of the Education Amendments of 1972, specifically 20 U.S.C. § 1681(a), which prohibits discrimination in "any education program or activity receiving Federal financial assistance[.]"

Defendants Pleasant Valley School District; Douglas C. Arnold, the Superintendent of Schools; Anthony A. Fadule, Assistant Superintendent of Schools; and John J. Gress, Principal (hereinafter collectively "defendants")[3] have moved to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

Because several of the plaintiffs' causes of action are brought under federal statutes, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have supplemental jurisdiction over the Plaintiff John Doe's state law claims pursuant to 28 U.S.C. § 1367.

---

[3]The plaintiffs also sue the wrestling coach, Mark Getz, but he filed an answer to the complaint instead of a motion to dismiss. (Doc. 15).

**Standard of review**

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v.

<u>Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." <u>McTernan v. N.Y.C.</u>, 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotation marks omitted).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).  "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." <u>Phillips</u>, 515 F.3d at 232 (citation omitted).  "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" <u>DelRio-Mocci v. Connolly Props., Inc.</u>, 672 F.3d 241, 245 (3d Cir. 2012) (quoting <u>Twombly</u>, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth."
Iqbal, 556 U.S. at 679.  Next, the court should make a context-specific
inquiry into the "factual allegations in [the] complaint to determine if they
plausibly suggest an entitlement to relief."  Id. at 681.

**Discussion**

Defendants' motion raises twelve separate issues.  We will address
them in turn.

**1.  Plaintiff Lori Moeck**

The Amended Complaint's caption names Lori Moeck, the mother of
Plaintiffs John and Jane Doe.  Defendants first argue that Plaintiff Lori
Moeck should be dismissed because she has not alleged any injuries that
she has suffered as a named parent.  Plaintiff indicates that Plaintiff Lori
Moeck is named merely as the guardian *ad litem* to her minor children.
She does not assert any causes of action in her own right. (Doc. 33, Pls.'
Opp'n Br. at 7).  Accordingly, we will deny the motion to dismiss Lori
Moeck as moot, because she is not named as a party in her own right.

**2.  State Law Claims in Count I and II against the school district,
Fadule and Gress[4]**

Next, defendants argue that the state law claims found in Counts I
and II should be dismissed on the basis that the Pennsylvania Political

---

[4]With regard to issues 2 through 10, the only plaintiff involved is John
Doe.  We will thus use the term "plaintiff" to refer exclusively to John Doe in
our discussion of these issues.

Subdivision Tort Claims Act, 42 PA. CON. STAT. ANN. §§ 8541, 8542, provides immunity to the defendants on these claims. Plaintiff's brief clarifies that Count I and Count II raise solely federal civil rights claims pursuant to 42 U.S.C. § 1983, (hereinafter "section 1983"), not state law claims. (Doc. 33, Pls.' Opp. Br. at 7). Accordingly, defendants' motion is denied as moot. The claims it seeks dismissal of are not actually pled in the complaint.

### 3. State Law Claims in Count II against Defendant Arnold

Defendants also contend that absolute immunity precludes plaintiff's state law claims against Defendant Arnold. Again, plaintiff points out that Count II does not raise any state law claims. (Id.) Hence, we will deny defendants' motion on this point as moot.

### 4. State Law Claims in Count II - no part in the alleged assault and battery

The defendants next argue that Arnold, Fadule and Gress should be dismissed on any state law claim of assault and battery because they had no part in the alleged assault and battery. Plaintiff's amended complaint, however, only asserts a federal civil rights claim in Count II. (Doc. 33, Pls.' Opp'n Br. at 8). No state law claims are alleged. Thus, we will deny the motion on this point as moot.

**5. Fourteenth Amendment claims in Count I and II against the School District**

The next issue raised by the defendants, and the first issue in contention, pertains to the School District as a defendant in the section 1983 civil rights claims raised in Counts I and II. As explained more fully below, for a municipal entity, such as a school district, to be liable on a civil rights claim, the violation of the plaintiff's civil rights must have been caused by a policy or custom of that municipal entity. Defendants argue that plaintiff has failed to allege a proper policy or custom, therefore the school district should be dismissed from Counts I and II. Plaintiff asserts that the complaint properly alleges municipal liability against the school district. After a careful review, we agree with the plaintiff.

Plaintiff brings the Fourteenth Amendment claims under section 1983. To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Section 1983 does not, by its own terms, create substantive rights. Rather, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996).

8

In the instant case, plaintiff asserts that the defendants violated his Fourteenth Amendment rights. The state actor defendant who is alleged to have directly violated plaintiff's rights is the wrestling coach, an employee of the school district.

Plaintiff seeks to hold the school responsible for the civil rights violation committed by its employee. Municipal employers, such as school districts, however, cannot be held vicariously liable for the constitutional violations committed by their employees. Monell v. NYC Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation. Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 1997). A policy may be established several different ways, including a municipality's failure to train its employees. See Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989) (explaining that a failure to train may represent a policy that will support municipal liability). Plaintiff's brief indicates that it seeks to establish a municipal policy based upon the school district's failure to adequately train Defendant Getz, the wrestling coach.

Once a plaintiff identifies the "policy" at issue, he must demonstrate causation, that is, that the municipality through its policy was the "'moving force' behind the injury." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520

9

U.S. 397, 404 (1997)).  Where the policy does not facially violate the Constitution, causation is established by demonstrating **deliberate indifference** to the policy's known or obvious consequences.  Id.  "Failure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  Id. (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)).

If no pattern of violations exists, the plaintiff bears a high burden to establish deliberate indifference.  He must demonstrate that the violation of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations.  Id.  The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference.  Id.

The Third Circuit Court of Appeals has further described failure to train municipal liability as follows: "a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

Plaintiff's amended complaint alleges that prior to the incident, Defendant Getz, the wrestling coach, had a reputation for aggressiveness "who coached through intimidation and humiliation by yelling insults and using inappropriate misogynist and homophobic references." (Am. Compl. ¶ 16). The complaint further alleges that the school supervisors, including Defendants Arnold, Fadule and Gress "knew of Getz' propensity for aggression and inappropriate verbal abuse but ignored this behavior because of the success of the wrestling program which benefited [sic] the Pleasant Valley School District[.]" (Id. ¶ 17).

The Amended Complaint also tells of another incident involving Defendant Getz and a high school wrestler. It asserts that "[d]uring the varsity district matches, Defendant Mark Getz verbally harassed and humiliated a child, identified here as H.D., until the boy verbally retaliated whereby Defendant Getz grabbed him around the throat and threw him against the wall." (Id. ¶ 43).[5]

We find that plaintiff has made sufficient allegations to support causation based upon a failure to train policy. Read in conjunction with plaintiff's factual averments, these allegations may impose municipal liability against the School District. Moreover, unlike the summary

_____

[5]The Amended Complaint does not indicate the date of this occurrence or if it happened prior to Getz's altercation with Plaintiff John Doe. Defendants' reply brief indicates that this event occurred after the incident of which plaintiff complains. (Doc. 35, Defs.' Reply Br. at 4, n.2).

judgment cases relied upon by the defendants, discovery in this case has not yet been completed.[6]  Therefore, the portion of the motion to dismiss attacking municipal liability will be denied.[7]

  Based upon the above analysis, we find that plaintiff's Amended

---

[6]Defendant cites to <u>Sanford v. Stiles</u>, 456 F.3d 298 (3d Cir. 2006) and <u>Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.</u>, 272 F.3d 168 (3d Cir. 2001), which are both summary judgment opinions.  Defendants cite <u>Gottlieb</u> for the proposition that plaintiff's "Amended Complaint is devoid of the requisite factual allegations that the School District implemented a custom or policy that affirmatively contributed to John Doe being assaulted." (Doc. 31, Defs.' Br. at 10)).  <u>Gottlieb</u>, however, dealt with summary judgment where the issue was not whether such a custom or policy had been alleged in the complaint but whether discovery had uncovered any evidence of such a custom or policy.  It may be appropriate to address this issue again at the summary judgment stage once discovery has been completed.

[7]A municipality also acts pursuant to a "policy" "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 155 (3d Cir. 2007) (internal quotation marks and citation omitted).  Plaintiff's brief indicates that Defendant Getz was "a school supervisor in charge of the wrestling program."  (Doc. 33, Pls.' Opp'n Br.at 10).  Defendant Getz, however, cannot be deemed a decisionmaker with final authority to establish school policy.

  Courts look to state law to determine who possesses final policy making authority.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 124 (1988).  Pennsylvania state law applies here.  Pennsylvania state law places final policymaking authority for the management, supervision, control or prohibition of exercise, athletics or games of any kind to board of school directors, not to the coach of the sport.  24 PA. CONS. STAT. ANN. § 5-511(a); <u>see also</u> <u>Patrick v. Great Valley Sch. Dist.</u>, 296 F. Appx. 258, 262 (3d Cir. 2008).

Complaint sufficiently alleges municipal liability against the School District to overcome defendants' motion to dismiss. The portion of the motion to dismiss attacking municipal liability will thus be denied.

**6 & 7.  Respondeat Superior Liability in Counts I and II regarding Defendants Arnold, Fadule and Gress**

The defendants' sixth and seventh issues involve plaintiff's allegations of respondeat superior liability in Counts I and II with regard to Defendants Arnold, Fadule and Gress.  Plaintiff explains, however, in the opposition brief that he does not plead liability based on a theory of respondeat superior for the acts of subordinate employees.  (Doc. 33, Pls'. Opp'n Br. at 12).  We will thus deny defendants' sixth and seventh issues as moot.

**8.  John Doe's Due Process and Equal Protection Claims**

Counts I and II of plaintiff's Amended Complaint assert Fourth Amendment Due Process claims.  (Am. Compl. ¶¶ 102, 117). Additionally, paragraph 96 of the Amended Complaint mentions equal protection.  Defendants next argue that no allegations in the complaint give rise to due process or equal protection claims.  Plaintiff clarifies in his brief that he raises a substantive due process claim based upon his liberty interest in his bodily integrity.  (Doc. 33, Pls.' Opp'n Br. at 13).  He does not seek to pursue an equal protection claim.  (Id. n.2). Thus, we will grant the motion and dismiss the equal protection claim and proceed to discuss

13

the due process claim.

Plaintiff alleges a substantive due process claim based upon a liberty interest in his bodily integrity. Defendants do not contest that plaintiff has such a right. Nor do they contest that Arnold, Fadule and Gress served in supervisory roles over the wrestling coach who is alleged to have violated that right. Defendants merely argue the facts, indicating that these defendants did not participate in any unconstitutional acts, did not direct such acts, or have knowledge of and acquiesce in such acts.

We find that defendants are arguing the facts prematurely. As set forth above, plaintiff argues that the defendants failed to properly train the wrestling coach. Discovery may reveal that these defendants were responsible for the alleged lack of training. Therefore, the motion to dismiss Arnold, Fadule and Gress on the substantive due process claim will be denied.

## 9. John Doe's State-Created Danger Claims in Count II against the School District, Arnold, Fadule and Gress

Count II of plaintiff's complaint asserts a state-created danger claim against the School District, Arnold, Fadule and Gress. Generally, plaintiff alleges that the wrestling coach, a state actor, created a danger with his practice of having his students "live wrestle" with others outside of their weight class. Defendants argue that this claim should be dismissed because plaintiff has failed to plead the basic elements of a state-created

14

danger cause of action.  Plaintiff argues that a state-created danger claim has been asserted against the school district.  After a careful review, we agree with the plaintiff.

Generally, the due process clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by other private citizens.  See DeShaney v. Winnebago Cnty. Dept. of Soc. Svcs., 489 U.S. 189, 195-96 (1989).  Thus, usually the plaintiff would have no claim against the defendants for the harm caused by the larger person he wrestled.  An exception to this general rule exists that is known as the "state-created danger" theory.  The state-created danger theory can be "utilized to find a constitutional tort duty under § 1983 outside of a strictly custodial context[.]" D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1373 (3d Cir. 1992).  Under the "state-created danger" theory, courts ask "whether the state actors involved affirmatively acted to *create* plaintiff's danger, or to render him or her more *vulnerable* to it".  Id. (emphasis in the original).

A plaintiff must establish the following four factors to prevail on a state-created danger claim:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm

15

> brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all."

Standford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006).

Defendants argue that plaintiff has not alleged any of these factors sufficiently to assert a cause of action for a state-created danger. Plaintiff concedes that he has not pled a sufficient cause of action with regard to Defendants Arnold, Fadule and Gress. (Doc. 33, Pls.' Opp'n Br. at 15). Thus, the motion to dismiss those defendants from the Count II state-created danger claim will be granted as unopposed.

Plaintiff argues, however, that a state-created danger claim has been sufficiently alleged against Defendant Getz. The School District can be held liable, according to plaintiff, because it ratified Getz' actions. Accordingly, we will examine the complaint to determine if a cause of action has been pled against Getz and then whether the School District can be held liable for Getz's actions.[8]

The Amended Complaint alleges as follows with respect to Defendant Getz and the state-created danger theory:

> By his conduct, Defendant Getz forced [John Doe] to wrestle an older, larger boy who was many

---

[8]The School District has filed a motion to dismiss this count. Defendant Getz has not filed a motion to dismiss. To determine whether a claim has been made against the School District, however, we must first determine whether a claim has been made against Getz.

16

levels above Plaintiff's weight class in deliberate violation of established PA Interscholastic Athletic Association (PIAA) wrestling handbook.

By his conduct, Defendant Getz forced Plaintiff [John Doe] to wrestle an older, larger student who was known to have anger problems, and deliberately encouraged, tolerated, and ratified the assault and battery of Plaintiff at the older, larger boy's hands.

Defendant Getz created a state-created danger in that: 1) the harm caused Plaintiff [John Doe] was foreseeable and direct; 2) Getz acted with willful disregard for Plaintiff's safety; 3) his relationship with Plaintiff made Plaintiff vulnerable to the foreseeable harm; and 4) he created the very situation that allowed the larger boy to cause harm to Plaintiff.

(Am. Compl. ¶¶ 111-13) (paragraph numbers omitted).

The facts of the encounter between plaintiff and the larger wrestler are alleged as follows: At a wrestling practice, Defendant Getz required plaintiff, who weighed 145 pounds, to live wrestle another student who weighed 220 pounds. (Am. Comp. ¶ 51). The larger student was known to lose his temper. (Id.) The larger wrestler began angrily shoving and pushing John Doe. He picked up John Doe and threw him through double wooden doors. (Id. ¶ 52). Defendant Getz not only allowed this assault to occur but also encouraged it. (Id. ¶ 53). John Doe sought to quit the match and leave the room. The coach called him a "pussy" and told him to get back into the room. (Id. ¶ 54). Plaintiff re-entered the gym and before he even could get into wrestling position, the larger student struck him on the side of his head with a closed fist. (Id. ¶ 55).

With regard to the four factors necessary to establish a state-

17

created danger, the defendants only challenge one. They assert that the Defendant Getz's actions did not shock the conscience. We disagree. A factfinder could find that Getz acted in such a manner as to shock the conscience. He set up this wrestling practice with a large student, known to lose his temper, with someone who was seventy pounds lighter. He cajoled the plaintiff to continue wrestling the student who outweighed him by seventy pounds even after plaintiff was initially injured. Such conduct may shock the conscience. Accordingly, we find that the plaintiff has made sufficient allegations to support the state-created danger claim against Defendant Getz.

Because we have found that a proper state-created danger theory has been alleged against Defendant Getz, we must next determine whether the school district can be held liable for Getz's actions. See M.B. ex rel. T.B. v. City of Phila., No. Civ. 00-5223, 2003 WL 733879, at *6 (Mar. 3, 2003) ("As the Third Circuit explained, "[t]he precedent in our circuit requires the district court to review the plaintiff's municipal liability claims [under Monell and its progeny] independently of the section 1983 claims against the individual [state actors], as the City's liability for a substantive due process violation does not depend upon the liability of any [state actor]." (quoting Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996))). As we have explained in our Monell analysis, if Getz's actions were taken due to a failure to train, then the school district could be liable

for any constitutional violations that Getz committed.  That analysis is sufficient at this stage of the proceedings for this issue also.  Accordingly, we will not dismiss the defendant school district from plaintiff's state-created danger claim.

## 10.  Section 1983 Qualified Immunity and Defendants Arnold, Fadule and Gress

Defendants also raise the issue of qualified immunity.  Defendants argue that Arnold, Fadule and Gress, who have been named in the their individual capacities as public officials, have qualified immunity to the section 1983 claims against them.  Plaintiff argues that applying qualified immunity in the instant case is inappropriate.  After a careful review, we agree with the plaintiffs at this time.

Qualified immunity can serve as a defense to an individual defendant accused of a civil rights violation.  See, Hunter v. Bryant, 502 U.S. 224, 227 (1991).  Qualified immunity does not apply where state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Phila., 409 F.3d 595, 699–700 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a qualified immunity analysis, therefore, the court must examine: 1) whether the officials violated a constitutional right; and 2) whether that right was clearly established at the time.  Id.

A right is clearly established if "it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted."
Reedy v. Evanson, 615 F.3d 197, 224 (3d Cir. 2010) (quoting Saucier v.
Katz, 533 U.S. 194, 202 (2001)).

Thus far in this memorandum we have determined that a question
exists as to whether the defendants violated a constitutional right.  If it is
found that a constitutional right was violated, i.e., the right to bodily
integrity, we conclude that this right was in fact clearly established at the
time of the complained of events.  Therefore, the application of qualified
immunity to the individual defendants is inappropriate at this time.

**11.  Jane Doe's Title IX Claim and Notice to the School District[9]**

Count V of the amended complaint asserts a Title IX claim against
the School District on the basis that Plaintiff Jane Doe was sexually
harassed.  Defendants argue that Title IX requires a plaintiff to plead
actual notice of the alleged discrimination.  Here, plaintiff alleges no such
notice according to the defendants.  Plaintiff argues that sufficient notice
of the alleged sexual harassment/discrimination has been pled.  After a
careful review, we agree with the plaintiff.

Count V of plaintiff's amended complaint asserts a claim on behalf of
Plaintiff Jane Doe pursuant to Title IX of the Education Amendments of
1972 as amended, 20 U.S.C. § 1681, et seq., (hereinafter "Title IX") based

---

[9]Issues 11 and 12 deal exclusively with Plaintiff Jane Doe.  Thus,
when we use the term "plaintiff" in these sections, it is to she that we refer.

upon sexual harassment.  In pertinent part, Title IX provides "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  "Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district."  Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 359 (3d Cir. 2005).

The Supreme Court has held that Title IX damages cannot be recovered "for the sexual harassment of a student by one of the district's teachers . . . unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998).

The facts alleged in the instant case are as follows:

Assistant wrestling coaches Keith Smith and Defendant Getz "would often engage in gender discrimination by asking [Jane Doe] if she had gotten her period 'cause we see your pad.'" (Doc. 25, Am. Compl. ¶ 18). Defendant Getz "once discussed with [Jane Doe] a 'threesome' (a reference to a sexual act with two other individuals) he was involved in while in college[.]" (Id. ¶ 19)  Smith and Getz discussed their first sexual encounters with graphic details.  (Id. ¶ 20).  Defendant Getz would refer to

wrestling team members as "weak like girls" to humiliate them. (Id. ¶ 21).

He once yelled at Jane Doe to "get her balls to the matt." (Id. ¶ 22). He

asked Jane Doe and another female if they wore "strap-ons." (Id. ¶ 25).

He also asked a boy who was wrestling Jane Doe, "Hey, how's it feel

knowing that's probably one of the only woman [sic] you'll ever have on

top of you." (Id. ¶ 26). Defendant Getz would also make sexual comments

to the male wrestlers in front of [Jane Doe] for example he would suggest

that a wrestling move should be done "like you're with your girlfriend. You

just stick in the head and say 'oh, that's nice;'" "fully penetrate her;" "you

fully penetrate all the way through the move." (Id. ¶ 28). Defendant Getz

also called plaintiff's boyfriend a "pedophile." (Id. ¶ 33).

In 2012, Jane Doe told Defendant Gress, the school principal, about

the "period" comments and complained of the other inappropriate

comments. (Id. ¶ 29). She also informed Tresa Malligo, Vice-Principal

about the ongoing sexual harassment including all the allegations set forth

above. (Id. ¶ 36).

Defendants argue that Defendant Getz cannot be considered an

appropriate person to be put on notice of the harassment under Title IX

because he is one of the alleged perpetrators. This argument, however, is

not controlling with regard to this issue. The Amended Complaint

indicates that Jane Doe notified both the principal and vice-principal of the

harassment. See Warren v. Reading Sch. Dist., 278 F.3d 163, 171 (3d

Cir. 2002) (explaining that a school principal is an appropriate person to receive notice under Title IX). Thus, we find the defendants' argument unconvincing. Jane Doe is alleged to have notified appropriate school officials. This portion of the motion to dismiss will be denied.

## 12. Jane Doe's Title IX Claim and Severe or Pervasive Conduct

The final argument defendant raises is another attack on Count V. Defendant contends that for a Title IX violation, the alleged harassment must be so severe, pervasive, and objectively offensive so as to deny the student equal access to educational opportunities. Here, plaintiff has not alleged such conduct. Plaintiff argues that her allegations are sufficient to sustain her Title IX claim. We agree with the plaintiff.

In support of their position that sexual harassment from a teacher/coach toward a student must be pervasive, severe and objectively offensive, defendants cite to Davis v. Monroe Cnty. Bd. of Educ., 526 U.S 629 (1999). Davis is not on point, however, because that case dealt with student on student sexual harassment, not teacher on student sexual harassment. Defendants cite to no cases that hold sexual harassment of a student by a teacher is appropriate as long as it is not pervasive and severe. One might argue that sexual harassment from a teacher toward a student is always inappropriate and should be actionable under Title IX under a lesser standard than "pervasive and severe." We need not address that issue instantly however, because even if defendants had

cited persuasive authority for their position, the facts set forth above indicate that Jane Doe asserts that she was subjected to sufficiently pervasive and severe harassment to be objectively offensive. Accordingly, this portion of the motion to dismiss will be denied.

**Conclusion**

For the reasons set forth above, the defendants' motion to dismiss will be granted in part and denied in part. Remaining in the case will be Counts I, Due Process claim against all defendants; Count II, state-created danger claim against Defendant Getz and the school district; Count III, assault and battery against Defendant Getz; Count IV, intentional infliction of emotional distress against Defendant Getz and Count V, Title IX violation against the School District. An appropriate order follows.

**Date: <u>Nov. 14, 2013</u>**          **<u>s/ James M. Munley</u>**
                                        **Judge James M. Munley**
                                        **UNITED STATES DISTRICT COURT**