**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LORI MOECK**, **in her capacity** | : | **No. 3:13cv1305** |
| **as parent and natural guardian** | : | |
| **of C.M. and A.M.; C.M., a minor;** | : | **(Judge Munley)** |
| **and A.M., a minor,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PLEASANT VALLEY SCHOOL** | : | |
| **DISTRICT; DOUGLAS C.** | : | |
| **ARNOLD, Superintendent of** | : | |
| **Schools, Pleasant Valley School** | : | |
| **District; ANTHONY A. FADULE,** | : | |
| **Assistant Superintendent of** | : | |
| **Schools, Pleasant Valley School** | : | |
| **District; JOHN J. GRESS, Principal,** | : | |
| **Pleasant Valley School District;** | : | |
| **MARK GETZ, Wrestling Coach** | : | |
| **Pleasant Valley School District,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is Defendant Mark Getz' motion for

partial summary judgment regarding allegations he violated Plaintiff CM's

constitutional rights while he served as CM's high school wrestling coach.

The motion has been fully briefed and is ripe for disposition.

**Background**[1]

Plaintiff CM (hereinafter "plaintiff" or "CM") was a ninth grade male student at Pleasant Valley School District during the 2012-13 school year. (Doc. 123-3, ¶ 18).   Plaintiff AM, CM's sister, was an eleventh grade student at the school during the 2012-13 school year. (Id. ¶ 19).  Both CM and AM were on the wrestling team at the relevant time.  (Id. ¶ 20).  A. Moeck, who is not a party, is the sister of both CM and AM, and she served as the wrestling team's manager during 2012-13.  (Id. ¶ 21).  Plaintiff Lori Moeck is the mother of CM, AM and A. Moeck.  (Id. ¶ 22).  Defendant Mark Getz taught at the school district and served as its Head Wrestling Coach at the time in question.  (Id. ¶¶ 14, 17).

This case arises from a wrestling practice held on December 3, 2012. CM, AM, A. Moeck and Defendant Getz all attended the wrestling practice. As discussed more fully below where appropriate, CM alleges that Defendant Getz forced him to wrestle DA, a substantially larger student, who had anger management issues.  CM alleges that he suffered injuries from wrestling with DA.  When CM attempted to leave the practice, he and

---

[1]  For these brief background facts, we have cited to Defendant Getz's statement of undisputed material facts.  We have only cited to paragraphs of the statement with which plaintiff agrees.

Defendant Getz got into a verbal altercation which escalated into a physical altercation of some sort with the coach ultimately lifting CM up on his tiptoes against the gymnasium wall and CM's head coming into contact with the cinder block wall.

Plaintiffs subsequently instituted the instant lawsuit.  As to Defendant Getz, the complaint asserts the following causes of action:  Count I - excessive force/substantive due process; Count II - state-created danger theory; Count III - assault and battery, and Count IV - intentional infliction of emotional distress. Getz now moves for partial summary with regard to the excessive force/substantive due process claim, the state created danger theory and the intentional infliction of emotional distress claim, bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings several of his causes of action under federal statutes and the federal constitution, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3

**Legal standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party

4

moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant Getz moves for summary judgment on the following counts of plaintiffs' complaint: Count 1-excessive force; Count 2-state-created danger theory; Count 4-intentional infliction of emotional distress. We will address these issues separately.[2]

**A. Count 1, excessive force/substantive due process**

Count 1 of plaintiff's complaint alleges a claim against Defendant Getz for excessive force/substantive due process under 42 U.S.C. § 1983. The facts surrounding this claim involve the wrestling practice held on December 3, 2012. At this practice, CM went to wrestle with a group of

---

[2]Defendant Getz does not seek summary judgment on Count III, Assault and Battery.

teammates but Coach Getz told him to find a bigger challenge, that is, group of larger students.  (Doc. 123-6, Pl. CM's Dep. (hereinafter "Pl.'s Dep.") at 18-19).   CM found a group of larger students, which included another member of the wrestling team, DA.  (Id. at 20-21).  CM weighed 138-140 pounds and DA weighed approximately 200-220 pounds.[3]  (Id. at 64).  Despite the disparity in their weights, CM and DA proceeded to wrestle with each other. (Id. at 12).  While wrestling, DA became angry and pushed CM through a set of double wooden doors causing CM to land in the hallway.  (Id. 22-23).

In the hallway, Defendant Getz, called Plaintiff CM a "pussy" and told him to get his "ass" back into the room.  (Id. at 26-27).  CM returned to the gym and continued wrestling with DA.  (Id. at 28).  DA began getting rough and CM told him to "chill out."  (Id. at 33).  Then, DA punched CM in the head.  (Id. at 34).  CM decided that he had had enough of the practice.  He stopped wresting and started to leave the gymnasium.  (Id. at 35).

The assistant coach told CM that he was giving up opportunities by leaving.  (Id. at 38). Then, Defendant Getz started screaming at plaintiff, using inappropriate names such as "faggot."  (Id. at 38-40).  CM told Getz

---

[3]Getz denies instructing CM specifically to wrestle with DA.

to "fuck off," but Getz continued his tirade.  Plaintiff again told him to "fuck off."  (Id. at 38-39).

　　　After being told a second time to "fuck off", Defendant Getz jumped up from the floor where he'd been sitting, grabbed CM's arm and power-walked him to a wall in the gymnasium.  (Id. at 40-42).  The wall was padded up to approximately 5 1/2 to 6 feet.  Above the padding, it was cinder block.  (Id. at 44-46).   At the wall, Defendant Getz grabbed plaintiff by the shirt and lifted him on his tiptoes, causing plaintiff to hit his head on the cinder block wall.  (Id. at 44-46).  Getz's forearm rose to just below plaintiff's neck.  (Id. at 50).[4]  Defendant Getz yelled at CM that he (Getz) is not his (CM's) "fucking" parent and that he should not treat him as if he were.  (Id. at 49).  Then he let CM go, and CM fell to the floor on all fours.  (Id. at 50).  CM made his way to a garbage pail and began to vomit a foamy substance into it.  (Id. at 51).  Evidently, an anxiety attack caused CM's symptoms although initially he thought he had suffered an asthma attack.  (Id. at 242-43).   His mother arrived at the school and took him to the hospital emergency room.  (Id. at 60). The extent of plaintiff's injury will be discussed below.

─────────────

　　　[4]  Plaintiff's height at the time was 5'9" to 5'10".  (Id. at 50).

While on the floor recovering his composure, a teammate asked the coach if he could bring Plaintiff CM some water.  (Id. at 54). The coach said, "No, leave him."  (Id.)  Defendant Getz, however, did not prevent plaintiff's sister from bringing him a cup of water.  (Id. at 58).  Before departing for the hospital, plaintiff apologized to the coach for cursing at him.  (Id. at 182).  "I shouldn't have cursed at an adult like that and I just said I'm sorry, you know," CM explained at his deposition.  (Id.)   Plaintiff CM bases his section 1983 excessive force claim on these facts.

To establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under of color of state law.  Second, the conduct must deprive the complainant of rights secured under the Constitution or federal law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Section 1983 does not, by its own terms, create substantive rights. Rather, it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws.  United States v. Kneipp, 95 F.3d 1199, 1204 (3d Cir. 1996).

Here, the parties do not dispute that Defendant Getz, as a public school district wrestling coach, acted under of color of state law.   Plaintiff

CM claims that Getz's use of force was excessive and a violation of the

due process guaranteed by the Fourteenth Amendment to the United

States Constitution.  Getz disagrees and moves for summary judgment on

this claim.

The use of force by a public school official against a student violates

the due process clause of the Fourteenth Amendment when it "shocks the

conscience."  Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272

F.3d 168, 173 (3d Cir. 2001).  Conduct is conscience shocking when it is

intended to cause injury in some way unjustifiable by a legitimate

governmental interest.  Id. at 172.

The Third Circuit explained:

> The substantive component of the Due Process
> Clause protects individual liberty against certain
> government actions regardless of the fairness of the
> procedures used to implement them. The
> substantive component of the due process clause is
> violated by state conduct when it can properly be
> characterized as arbitrary, or conscience shocking,
> in a constitutional sense.  Thus, conduct intended
> to injure in some way unjustifiable by any
> government interest is the sort of official action
> most likely to rise to the conscience-shocking level.

Id. (internal quotation marks, citations and brackets omitted).

The Third Circuit Court of Appeals has set forth the following four factors to

weigh in determining whether a teacher's actions "shock the conscience":

9

> a) Was there a pedagogical justification for the use
> of force?;
> b) Was the force utilized excessive to meet the
> legitimate objective in this situation?;
> c) Was the force applied in a good faith effort to
> maintain or restore discipline or maliciously and
> sadistically for the very purpose of causing harm?;
> and
> d) Was there a serious injury?

Id. at 173.

Thus, we must examine these four factors.  We do so separately.

### 1. Pedagogical justification

First, Defendant Getz argues that his actions served a pedagogical-

or teaching-justification.  Defendant Getz argues that he used force upon

plaintiff to stop a fight between CM and DA.  Alternatively, he argues that a

pedagogical interest in the use of force can be found because even plaintiff

himself admits that he, Defendant Getz, used the force immediately after

plaintiff used foul language.

In explaining this factor the Third Circuit Court of Appeals has stated

that "[a]t the very least, the force must be capable of being construed as an

attempt to serve pedagogical objectives."  Gottlieb, 272 F.3d at 174.  Such

a pedagogical objective is evident when "a school official grabs a student

to break up a fight . . .  [or] chokes a student when hearing him curse[.]"

Id.  Defendant Getz argues that even when the facts are viewed in the light

10

most favorable to Plaintiff CM, the coach took action against him only after CM admittedly cursed at him several times.

We agree with the defendant.  We can construe the force used as an attempt to serve a pedagogical objective.  Plaintiff  admits to cursing at the coach several times immediately prior to the coach taking action.  As set forth in Gottlieb, a pedagogical objective is evident when a teacher uses force in response to student cursing.   Accordingly, we find that the use of force is capable of being construed as an attempt to serve a pedagogical purpose.[5]

### 2. Was the force utilized excessive to meet the legitimate objection in this situation?

The second factor to examine in determining whether the defendant's actions shock the conscience is whether the force used was excessive to meet the legitimate objection in the situation.  Gottlieb, 272 F.3d at 172. Defendant Getz argues that whether you consider the use of force as an effort to prevent a fight between two students or as a response to student cursing, the force used was not excessive.  Plaintiff CM argues that the

---

[5]  Defendant Getz asserts that he used the force in an attempt to prevent a fight, which is clearly a pedagogical objective.  Plaintiff argues Getz' excuse about preventing a fight is not truthful.  As we view the facts in the light most favorable to the plaintiff, we will not credit defendant's claim that he used force to prevent a fight.

defendant's action can be viewed as an unwarranted fit of rage, which is inappropriate.

After a careful review, we find that this factor weighs in favor of plaintiff. Defendant Getz has presented no evidence that he *needed* to apply the force to stop plaintiff from cursing. But that does not mean that Defendant Getz must be found liable for a substantive due process violation. This factor is but one of four factors that we must examine and weigh together to determine if the evidence supports a finding that Getz' actions shock the conscience.

### 3. Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?

The third factor we must apply is whether Defendant Getz applied force in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm. Gottlieb, 272 F.3d at 172. Under this factor, the defendant must do more than intend the physical contact, he must intend to harm the plaintiff. Id. at 175. Here, defendant argues that no evidence exists that he intended any harm to the plaintiff. Plaintiff, on the other hand, argues that an examination of the circumstances involved reveals an intent to cause harm. After a careful review, we agree with the defendant - no evidence exists that defendant

12

intended to harm plaintiff.

Plaintiff analogizes this case to <u>Metzger v. Osbeck</u>, 841 F.2d 518 (3d Cir. 1988).  In <u>Metzger</u>, a physical education teacher stood behind a student, put his arms around the student's neck and lifted him up on his toes to discipline him for using inappropriate language.  <u>Id.</u> at 519.  When the teacher released the student, the student had lost consciousness and fell face down, lacerating a lip, breaking his nose and fracturing his teeth. <u>Id.</u> at 519-20.  The student needed to be hospitalized.  <u>Id.</u> at 520.

The Third Circuit Court of Appeals found that summary judgment was inappropriate in that case. The physical education teacher involved was also a wrestling coach, and a jury could have concluded that he knew the inherent risks of restraining the student.  <u>Id.</u> at 521.  The teacher's statement that he did not intend the harm was insufficient to grant summary judgment.  <u>Id.</u>

Defendant, on the other hand, compares this case to <u>Gottlieb</u>, <u>supra</u>. In <u>Gottlieb</u>, a high school junior engaged in an argument with another student.  272 F.3d at 170.  The plaintiff, Gottlieb, "was a disruptive student with a lengthy disciplinary record."  <u>Id.</u>  The school's security officer told Gottlieb to leave the building, but she did not and continued her argument.

13

Id.  The security officer then took Gottlieb to the principal's office.  Id.

Gottlieb stood in the doorway of the assistant principal's office, who

allegedly began yelling at her and told her she was not allowed in the

school until a parent-teacher conference was held.  Id. at 170-71.  The

assistant principal told Gottlieb not to speak and pushed her shoulder with

his hand.  Id. at 170. This push propelled her backwards into the door

jamb.  Id.  Gottlieb's lower back struck the door jamb.  Id.  She asserted

that the push into the door jamb caused chronic back pain and cramping.

Id.

In examining the third factor of the substantive due process analysis,

the Third Circuit found that the assistant principal had done nothing more

than touch plaintiff's shoulder and push her inches backwards into the door

jamb.  Id. at 175.  The push was so minor that an intent to cause the

alleged harm could not be inferred from the act itself.  Id.  Moreover,

Gottlieb had testified at her deposition that she did not believe that the

assistant principal had intended to injure her.  Id.  The court thus found that

while the assistant principal's actions may rise to the level of a state law

tort, it did not rise to the level of a constitutional wrong.  Id.

The facts of this case do not fit squarely into the Gottlieb or Metzger

14

fact pattern. The coach's actions were more than shoving the shoulder of a student and less than knocking a student unconscious and dropping him to the floor. Taking everything into consideration, however, we find that the instant situation is more like the push into the door jamb where we cannot infer an intent to harm.

The circumstances of the situation do not reveal an intent to cause harm. Getz grabbed plaintiff and "speed" walked him over to a wall and put him up against the wall to talk or yell at him. While this treatment may not have been the most prudent or best course of action for the coach to take, there is nothing unusually sadistic or inhumane about it. See, e.g., Kurilla v. Callahan, 68 F. Supp. 2d 556 (M.D. Pa. 1999) (no substantive due process claim where teacher grabbed student by the shirt with clenched hands and pulled very hard, causing the student's chest to come into contact with the fists as in a punch resulting in bruising); Thomas v. Bd. of Educ. of W. Greene Sch. Dist., 467 F. Supp. 2d 483 (W.D. Pa. 2006) (no substantive due process claim where teacher, with alcohol on his breath, gave a closed fist punch to the chest/collarbone area of a student with such force that the student was knocked backwards until he was able to balance against a wall); Lillard v. Shelby Cnty Bd. of Educ., 76 F.3d 716

(6th Cir. 2006) (no substantive due process violation where soccer coach

verbally abused fourteen-year old female student, held her chin with one

hand and slapped her across the face); cf Webb v. McCullough, 828 F.2d

1151 (6th Cir. 1987) (a potential substantive due process claim where a

principal slapped a student, hit her with a door and threw her against a

wall); Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980) (a potential due process

claim where student was beaten with a paddle so extensively that she

needed to be hospitalized for ten days); John G. v. N.E. Educ. Intermediate

Unit 19, 490 F. Supp. 2d 565 (M.D. Pa. 2007) (potential substantive due

process claim where teacher allegedly squeezed student's ears, stepped

on the insteps of his feet, violently grabbed his neck, forced him to the

floor, hit his legs and head with a tissue box and pulled his hair).  We thus

agree with the defendant that this factor weighs in favor of finding no

constitutional violation.

### 4. Was plaintiff seriously injured?

The final factor in determining whether the defendant's actions shock

the conscience is whether the plaintiff suffered a serious injury.  Gottlieb,

272 F.3d at 172.  Defendant argues that plaintiff presents no evidence that

he suffered any injury at all due to his interaction with Coach Getz.  Plaintiff

argues that he suffered severe injury.  After a careful review, we agree with the defendant.  The plaintiff did not suffer an injury so severe so as to move this case into the constitutional realm.

Plaintiff argues that he suffered from an anxiety attack, had a closed head injury, suffered from posttraumatic headaches, anxiety and balance problems.  The record, however, is devoid of evidence to establish that any of these injuries were "serious" in a constitutional sense.  There is no evidence of any mark on plaintiff's body.  Additionally, the plaintiff himself indicated that his head did not come into contact with the wall with a severe amount of force.  He testified at his deposition that his head was not "extremely pounded, but . . . I made contact in an abrupt way."  (Pl.'s Dep. at 46).  If plaintiff received any noticeable injury from this contact with the wall, it is not set forth in the briefing.  Most of what plaintiff suffered from appears to be anxiety.  He complained at the emergency room of shortness of breath, but it appears that condition resolved on its own either before getting to the emergency room or while there without treatment.  In fact, it appears he received no treatment at the emergency room at all. (See Docs. 135-7, 135-9, 135-18, Emergency Room Records).

In support of his position that plaintiff did not suffer serious injury,

defendant presents the report of Dr. Thomas H. Graham, a Board Certified

Neurologist who reviewed plaintiff's medical records from 2012 and 2013.

Dr. Graham opined:

> Not only does the CT scan performed on
> 12/03/2012 fail to demonstrate any significant
> intracranial trauma but it also fails to demonstrate-
> localized swelling in the soft tissue outside of the
> skull that would serve as some indication for impact
> and soft tissue swelling that would be expected with
> significant head impact.  Also, the physical exam
> performed on 12/03/2012 failed to uncover any
> evidence of trauma to the back of the patient's
> head.  Those observations notwithstanding, there is
> no comment anywhere in the provided medical
> record that this patient had pain in the back of his
> head, either on the day of the event or
> subsequently. In short, there is no evidence in the
> medical records reviewed that the patient struck the
> back of his head or had symptoms pertinent to
> striking the back of his head on 12/03/2012.

(Doc. 123-11, Def. Ex, H, Expert Report of Dr. Thomas H. Graham).

Plaintiff argues that this opinion is not valid because Dr. Graham did

not take into account the records of the "Lehigh Valley Physician Group."

(Doc. 135-19, Pl. Ex. 19).  Plaintiff, however, does not explain the

significance of these records or have an expert opinion regarding them.

They evidently date from May through August 2014 approximately five to

six months after the incident.  The reports start on May 1, 2014, when the

plaintiff self-reported a "concussion".  We can find no place in the record,

and the plaintiff has cited to none, where any medical professional diagnosed plaintiff with a concussion from the wrestling practice incident. Plaintiff has submitted no expert medical report.  The records that plaintiff relies on do nothing to support a claim that he suffered a serious injury more than a year prior.  In fact, the assertion that he did suffer a serious injury, which is totally without support in the record, is belied by the record that he returned to the wrestling team (junior high team) two to three weeks after the incident and participated in approximately ten practices and thirteen matches for the junior high team between December 2012 and February 2013.  (Pl. Dep. at 81-84).

Based on all of the evidence, we must find that plaintiff has not created a genuine issue of material fact as to whether he suffered a serious injury.  The evidence, when viewed in the light most favorable to CM, indicates that he suffered from shortness of breath because of an anxiety attack.  Such harm is slight when compared to the harm found where a question of fact existed with respect to a use of force on a student set forth in the previous section.

Now that we have addressed all the substantive due process factors, we must determine whether judgment is appropriate for the defendant on

this issue.  In this part of the analysis, we bear in mind the standard set

forth above that a substantive due process claim can only be found where:

> the force applied caused injury so severe, was so
> disproportionate to the need presented, and was so
> inspired by malice or sadism rather than a merely
> careless or unwise excess of zeal that it amounted
> to a brutal and inhumane abuse of official power
> literally shocking to the conscience.  Not every
> violation of state tort and criminal assault laws will
> be a violation of this constitutional right, but some of
> course may.

Gottlieb, 272 F.3d at 173 (quoting Hall v. Tawney, 621 F.2d 607, 613 (4th
Cir. 1980).

A weighing of the factors leads us to conclude that the incident at

issue does not rise to the level of a constitutional violation.  Defendant took

the action he did either in response to plaintiff cursing or to stop a fight,

thus a pedagogical justification existed for his actions.  The force Getz

used, however, was more than was warranted by that pedagogical

justification.   Most important to our analysis, however, plaintiff has not

demonstrated that defendant had an intent to harm or that he (plaintiff)

suffered any serious harm.  Based on all of this, we find that the actions of

Defendant Getz were not so brutal, inhumane or sadistic as to shock the

conscience in a constitutional sense.  See  Gottlieb, 272 F.3d at 175

(finding no constitutional violation unless the school employee engages in

"a brutal and inhumane abuse of official power literally shocking to the

conscience").  Thus, we will grant summary judgment to Defendant Getz on

plaintiff's excessive force/substantive due process claim. [6]

## B. Count 2, state created danger

Count 2 of the amended complaint asserts a cause of action for

section 1983/state created danger on behalf of Plaintiff CM and against all

defendants.  (Doc. 37, Am. Compl. ¶¶ 109-18).  Plaintiff alleges that the

defendant created a danger by requiring that plaintiff wrestle teammates

during practice who were many levels above his weight class.  Defendant

Getz next challenges this claim.

Generally, the Due Process Clause of the Fourteenth Amendment

does not impose an affirmative duty on the state to protect its citizens from

harms caused by other private citizens.  See DeShaney v. Winnebago

Cnty. Dept. of Soc. Svcs., 489 U.S. 189, 195-96 (1989).  Thus, usually the

plaintiff would have no claim against the defendants for the harm caused

by the larger person he wrestled.  An exception to this general rule exists

that is known as the "state-created danger" theory.  The state-created

---

[6] It's always preferable that adults act like adults in the face of
disrespect from children.  Inappropriate action on the part of an adult,
however, does not automatically transform a possible assault and battery
case into a constitutional case.

danger theory can be "utilized to find a constitutional tort duty under § 1983

outside of a strictly custodial context[.]"  D.R. by L.R. v. Middle Bucks Area

Vocational Tech. Sch., 972 F.2d 1364, 1373 (3d Cir. 1992).  To determine

if a state action can be held liable under the "state-created danger" theory,

courts ask "whether the state actors involved affirmatively acted to *create*

plaintiff's danger, or to render him or her more *vulnerable* to it".  Id.

(emphasis in the original).

A plaintiff must establish the following four factors to prevail on a

state-created danger claim:

> (1) the harm ultimately caused was foreseeable and
> fairly direct;
> (2) a state actor acted with a degree of culpability
> that shocks the conscience;
> (3) a relationship between the state and the plaintiff
> existed such that plaintiff was a foreseeable victim
> of the defendant's acts, or a member of a discrete
> class of persons subjected to the potential harm
> brought about by the state's actions, as opposed to
> a member of the public in general; and
> (4) a state actor affirmatively used his or her
> authority in a way that created a danger to the
> citizen or that rendered the citizen more vulnerable
> to danger than had the state not acted at all."

Standford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006).

Here, Getz argues that he never specifically told plaintiff to wrestle

DA.  Moreover, Getz has evidence that for CM to wrestle DA was not an

22

unreasonably dangerous practice.  In fact, it was reasonable and not a

violation of any rules.  Additionally, Getz did not act with "deliberate

indifference" because he believed that there is no greater chance of injury

for a wrestler who wrestles outside of his class than for any other wrestler.

There are not facts that Getz consciously disregarded a substantial risk of

serious harm.  Lastly, CM's injury is not the kind of injury that is

foreseeable or direct.  It was not due to, for example, the heavier body

falling on plaintiff and it required no medical attention.

After a careful review, we agree with Defendant Getz.  Plaintiff has

presented no evidence that Defendant Getz's practice of having wrestlers

practice with those outside of their weight class is a dangerous practice.

On the other hand, Getz has presented the expert report of Robert Frank

Hartman, Jr., who indicates that is was reasonable and not a violation of

any rules for plaintiff to wrestle someone of a greater weight. Hartman

concluded: "By allowing C.M. to wrestle a significantly heavier wrestler

during practice on December 3, 2012, [Defendant] Getz, the wrestling

coach, and the Pleasant Valley School District acted reasonably and within

the rules established by both the PIAA [Pennsylvania Interscholastic

Athletic Association] and the NFHS [National Federation of State High

School Associations]." (Doc. 123-3, Def. Ex. J, Hartman Report).[7]

Because Getz did not engage in a dangerous practice we cannot find that he acted in a manner that shocked the conscience, nor do we find that he used his authority to create a danger.  Thus, we will grant summary judgment to the defendant on plaintiff's state created danger theory.

### C.  Count 4, intentional infliction of emotional distress

Count 4 of plaintiffs' amended complaint alleges a state law claim for intentional infliction of emotion distress.  The claim is asserted on behalf of Plaintiff CM versus Defendant Getz.  Getz now argues that summary judgment should be granted in his favor on this count.  Plaintiff CM concedes that there is insufficient evidence to establish the intentional infliction of emotional distress claim.  Accordingly, summary judgment will be granted to Defendant Getz on Count 4 as unopposed.

### D.  Count 3, assault and battery

Count 3 of the amended complaint asserts a Pennsylvania state law cause of action for assault and battery against Defendant Getz. (Doc. 37,

---

[7]Plaintiff also argues that defendant created a danger by having him wrestle someone with known anger management issues.  Plaintiff, however, has not presented evidence that CM's wrestling partner had anger management issues or that he should not have been allowed to wrestle due to such issues.

Am. Compl. ¶¶ 119-22).  This count is the last claim that remains with regard to Plaintiff CM. [8]  With the assault and battery claim, plaintiff asserts this court's supplemental jurisdiction.  We may decline to exercise supplemental jurisdiction when we have dismissed all claims over which we had original jurisdiction.  28 U.S.C. § 1367(c)(3)(23).   If we decide not to exercise supplemental jurisdiction and dismiss the state law claim, we "should do so without prejudice, as there has been no adjudication on the merits."  Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009).   With no federal questions involved, no reason exists for the assault and battery case to be tried in federal court.  The parties could adjudicate this claim in the appropriate state court.  Thus, after reviewing the count, and after considering judicial economy, convenience and fairness to the litigants, we will decline to exercise supplemental jurisdiction over the assault and battery claim.  See id. (affirming the district court's declining supplemental jurisdiction after the parties had been through discovery and summary judgment motions).  Count 3 will be dismissed without prejudice.

**Conclusion**

---

[8]In an order filed in conjunction with this order, we will grant summary judgment to the Defendant School District on Count V, a count that is maintained by Plaintiff A.M.

Thus, based upon the above reasoning, Defendant Getz's motion for summary judgment will be granted.  The court will grant Getz's motion pertaining to plaintiff's excessive force/substantive due process claim and the state created danger constitutional claims.  While we do not condone the coach's actions, they simply do not rise to the level of a constitutional claim.  The court will further grant Getz's motion for summary judgment regarding Plaintiff CM's intentional infliction of emotional distress as unopposed.  Additionally, we decline to exercise supplemental jurisdiction over plaintiff's state law assault and battery claim found in Count III. Count III will be dismissed without prejudice.   An appropriate order follows.

Date: <u>**April 15, 2016**</u>                    <u>**s/ James M. Munley**</u>
                                             **JUDGE JAMES M. MUNLEY**