THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LORI MOECK**, in her capacity as parent and natural guardian of C.M. and A.M.; C.M., a minor; and A.M., a minor, | : : : : | No. 3:13cv1305 (Judge Munley) |
| Plaintiffs | : : | |
| v. | : : : | |
| **PLEASANT VALLEY SCHOOL DISTRICT; DOUGLAS C. ARNOLD**, Superintendent of Schools, Pleasant Valley School District; **ANTHONY A. FADULE**, Assistant Superintendent of Schools, Pleasant Valley School District; **JOHN J. GRESS**, Principal, Pleasant Valley School District; **MARK GETZ**, Wrestling Coach Pleasant Valley School District, Defendants | : : : : : : : : : : : : : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is Defendants Pleasant Valley School District, Douglas C. Arnold, Anthony A. Fadule and John J. Gress's (collectively "defendants") motion for summary judgment in this case involving Plaintiffs C.M. and A.M.'s participation on Pleasant Valley High School wrestling team. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**

C.M. and A.M. are brother and sister. At the relevant times, they were both students at the Pleasant Valley School District and members of the high school's wrestling team. Plaintiff C.M.'s causes of action involve a verbal/physical altercation he had with Defendant Mark Getz, the coach of the team. Plaintiff A.M.'s claim involves allegations of sexual harassment by the coaching staff. Specifically, the claims alleged against these defendants include: Count I, Fourteenth Amendment excessive force/substantive due process, pursued by Plaintiff C.M. (Doc. 37, Am. Compl. ¶¶ 97-108); Count II, state created danger, pursued by Plaintiff C.M. (Id. ¶¶ 109-118); and Count V, Unequal treatment under Title IX of the Education Amendments of 1972 (hereinafter "Title IX"), pursued by Plaintiff A.M. After discovery, defendants moved for summary judgment.

**Jurisdiction**

Because plaintiffs' claims are brought pursuant to the federal constitution and Title IX, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party

3

moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

The first two counts of the Amended Complaint, Plaintiff C.M.'s Fourteenth Amendment excessive force/substantive due process (Doc. 37, Am. Compl.  ¶¶ 97-108); and state created danger, (Id. ¶¶ 109-18) depend on the viability of plaintiff CM's claims.  In a separate memorandum issued in conjunction with this memorandum, we have explained that Plaintiff C.M. does not have a valid excessive force/substantive due process claim and that without such a claim the state created danger theory fails.  Accordingly, judgment will be granted to the defendants with regard to Counts I and II.  The sole remaining claim is Plaintiff A.M.'s (hereinafter "plaintiff") Title IX cause of action, Count V.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). Although the complaint is not quite clear, and the briefing does not address it as such, it appears that plaintiff's Title IX cause of action is comprised of two parts. The first part is an allegation of direct discrimination against the plaintiff in that the coaching staff removed her from the wrestling team because she was female. (Doc. 37, Amended Complaint ¶ 136). Eventually, the coaching staff let her back on the team but treated her more harshly than male wrestlers such that she considers herself "constructively terminated" from the team. (Id.) The second portion of the Title IX Count is sexual harassment. (Id. 134-35). We will address these two claims separately.

**A. Direct Sex Discrimination under Title IX**

Plaintiff claims that she suffered from unlawful discrimination under Title IX with respect to her participation on the high school wrestling team. Plaintiff does not have a valid claim for discrimination. The Code of Federal Regulations provides that where a school provides a team for one

sex, members of the opposite sex must be allowed to try out for the team. 34 C.F. R. § 106.41. That would appear to be the situation in the instant case. Section 106.41, however, excludes "contact" sports which it defines as "boxing, **wrestling**, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact." Id. (emphasis added). Thus, Title IX provides no right for plaintiff to be a team member or even try out for her school's wrestling team. Thus, summary judgment will be granted to the defendants on this portion of plaintiff's claim.[1]

## B. Sexual harassment

The second portion of the plaintiff's claim, and the portion that the parties have discussed in their briefs, is a claim for sexual harassment under Title IX. Plaintiff asserts that the wrestling team's coaching staff sexually harassed her. "Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district. Bostic v. Smyrna Sch. Dist.,

---

[1] Additionally, plaintiff could not have brought a cognizable claim under the equal protection clause for this claim. See Williams v. Sch. Dist. of Bethlehem, Pa., 998 F.2d 168, 176 (3d Cir. 1993) (holding that where a party's claim falls under Title IX, it is inappropriate to also provide a constitutional analysis of the claim).

418 F.3d 355, 360 (3d Cir. 2005) (citing Franklin v. Gwinnett Cty. Pub. Sch., 503 U.S. 60, 75-76 (1992)).

Sexual harassment is actionable under Title IX where it is "so severe, pervasive and objectively offensive, [that it] undermines and detracts from the victims' educational experience, [such] that the victim-students are effectively denied equal access to an institution's resources and opportunities." Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 659, 651 (1999); see also Chancellor v. Pottsgrove Sch. Dist., 529 F. Supp. 2d 571, 573 (E.D. Pa. 2008) ("For liability to attach to sexual harassment under Title IX, the teacher's conduct must be so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school.") ( internal quotation marks and citation omitted).

To determine whether an environment is sufficiently hostile to support a sexual harassment claim, courts examine the totality of the circumstances including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance and whether it interferes with the victim's performance. Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-271 (2001).  The Supreme Court has

further explained that "[w]hether gender-oriented conduct rises to the level of actionable 'harassment' thus depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved[.]" Davis, 526 U.S. at 651 (internal citations omitted).  Finally, to support a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination **because of sex**." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotation marks omitted) (emphasis added).

Thus, we must determine whether plaintiff was subjected to harassment based upon her sex that was sufficiently severe and pervasive to create an abusive educational environment.  Viewing the record in the light most favorable to plaintiff, we find that plaintiff's evidence does not rise to the level of sexual harassment under Title IX.

According to the plaintiff the sexual harassment she endured is as follows:  Coach Getz "would call people a pussy, a faggot.  Heard once, string bean arms.  He would curse almost every single letter in the

alphabet." (Doc. 147-11, Pl.'s Dep. at 28-29).[2] "He would say fuck. He would call people assholes." (Id. at 29). He additionally used the word "bitch". (Id. at 30). He used these words, however, to the boys not to plaintiff or her sister. (Id.) Additionally, plaintiff notes that Coach Getz told teammate J.J. to "penetrate all the way through like he was having sex with a girl." (Id. at 93). These statements were not made to the plaintiff and are mere vulgarity, thus, we will not consider them sexual harassment of the plaintiff.[3]

Several statements, while not made directly to plaintiff, were made in her proximity and involved her. For example the coach asked a male who plaintiff was wrestling, "How does it feel knowing that's probably one of the only women you'll ever have on top of you?" (Id. at 133). Additionally, plaintiff stated that "[a]nd when he [J.J.] had to wrestle me one time [Coach Getz's] saying that I would be the only girl he'd [J.J.] touch –" (Id. at 93).

---

[2]The page numbers refer to the pagination of the actual deposition transcript not the court electronic page numbering.

[3]Additionally, plaintiff overheard two coaches (neither of them Defendant Getz - one was his brother Mark Getz and the other was "Coach Smith") discussing their sexual experiences in college on a school bus on the way home from a match. ((Doc. 147-11, Pl.'s Dep. at 84-87). An overheard conversation is not evidence of sexual harassment of the plaintiff.

We will take these statements into consideration in analyzing the totality of the circumstances plaintiff's case.

The coach additionally made direct statements to plaintiff that related to her sex. Directly to plaintiff, he said that she had to be a "boy" on the team, that she and another girl in the room had to have "strap-ons" - prosthetic penises. Over several years, he made the "strap-on" comment four times and the boy comment twice. (Id. at 32). Throughout her two years on the high school team the coach also said to "put your balls to the mat, you can't have your hips up." (Id. at 90). A statement he evidently also made to male team members. An assistant coach also once asked plaintiff if she was having her menstrual cycle during a wrestling match because he could see her "pad" through her singlet. (Id. at 100). He then laughed about it with another coach. (Id.)

A review of all these statements reveals fewer than ten sexually-tinged comments over the course of two or three years.[4] Such sporadic

---

[4]Another comment which plaintiff complains of is a statement the coach apparently made to plaintiff's sister - regarding the sister's boyfriend and calling him a pedophile for dating someone who was so young. (Doc. 147-17, E.D. Interview, at 9-10; Doc. 147-12, AM (AM is a non-party and sister to A.M. and C.M.) Dep. at 73). This statement was not said to, nor was it related to, plaintiff. Therefore, we do not take it into our analysis. Plaintiff's sister also testified that she once heard the coach say to some

incidents are not sufficiently pervasive to establish a sexual harassment claim.  Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997).  Moreover, the statements are mere offensive utterances.  While they are offensive and inappropriate, the statements do not address plaintiff in a sexual way.  Significantly, she was not sexually propositioned, physically threatened or touched in a sexual manner.  See Oncale, 523 U.S. at 80 ("Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity[.]").

     The record establishes that the coaching staff were not discriminatory -- they "harassed" everyone on the team, male and female.  They did not harass because of sex but rather, harassed everyone regardless of their sex.  As noted above, the harassment when directed at plaintiff specifically was tinged with references to her sex.  Plaintiff, however,  has not established the comments were aimed at her *because of*

---

boys who were "fooling around, wrestling" that one of the boys was spreading his leg wrong and to ask plaintiff as she would know how to do it. (Doc. 147-12, AM Dep at 44,46).   This statement was not said to plaintiff, and it does not appear that she heard it.  She did not testify to it, her sister did.  Regardless, even though when viewed in the light most favorable to the plaintiff, the statement was made only once.

her sex. The coaches treated her like everyone else, poorly and immaturely. The record does not support the assertion that the coaches treated them in that manner because of anyone's sex. Instead, the record indicates that they treated everyone the same regardless of sex. If anything, the interaction with the male students may have been even more sexually-tinged with the coach asking the male students about their sexual activity, but not while plaintiff was present. So while the actions of the coaching staff were vulgar and inappropriate, we find that they were not sexual harassment.

Plaintiff argues that the comments clearly fall within the definition of sexual harassment found within the school district's sexual harassment policy, Policy 248. (Doc. 147, Pl.'s Brief at 27). Whether the statements fall within the district's policy or not is irrelevant to our analysis. Perhaps the coaches could be disciplined based upon the school's own policies. Such policies, however, are not the basis for federal lawsuits. Indeed, plaintiff does not sue under the district's policy, but rather she sues under Title IX. Thus, the issue is whether the comments give rise to a valid sexual harassment claim under Title IX, and we have found that they do not.

This case is different from cases where the courts found sufficient evidence to maintain a sexual harassment case under Title IX.  For example, the Second Circuit Court of Appeals found sufficient evidence where a college professor compared a female student to Monica Lewinsky in almost every class and sometimes when she was not present in class as well as outside of class.  Hayut v. State Univ. of N.Y., 352 F.3d 733 (2d Cir. 2003).  In another case, sufficient facts were found where a college student alleged that a professor made sexual comments, physical contact and propositioned her for sex.  Mandsager v. Univ. of N.C. at Greensboro, 269 F. Supp. 2d 662 (M.D. N.C. 2003).  In this case, plaintiff alleges no physical contact or propositioning for sex.  Plaintiff has cited to no cases, and our research has uncovered none, where the plaintiff properly brought a sexual harassment claim under facts similar to those found in this case.  Accordingly, judgment will be granted to the defendants on the sexual harassment portion of plaintiff's Title IX claim.[5]

In addition to establishing sexual harassment, the plaintiff would also have to establish a basis for institutional liability to succeed on her cause of

---

[5]Interestingly, plaintiff stated that she did not know that her mother had filed a sexual harassment lawsuit on her behalf.  (Doc. 121-7, Pl.'s Dep. at 60).

action. Although, we have found that the facts do not support a sexual harassment claim, we will discuss institutional liability as we find that plaintiff cannot establish it either.

A Title IX action may only be prosecuted against a school district, rather than the individual school employees who are accused of the harassment. But there must be a reason for holding the school liable for the actions of its employees. To maintain an action, the plaintiff must present evidence that she provided actual notice to an appropriate official at the school. Bostic v. Smyrna Sch. Dist., 418 F.3d 353, 360 (3d Cir. 2005). "Actual notice must amount to actual knowledge of discrimination in the recipient's programs. Further, the response [by the school district] must amount to deliberate indifference to discrimination.... The premise, in other words, is an official decision by the recipient not to remedy the violation." Id. (internal quotation marks and citations omitted).

Here, plaintiff indicated in her deposition that she did not complain about anything sexual to anybody. (Doc. 121-7, Pl. Dep. at 88). Despite plaintiff's deposition testimony, plaintiff now argues that it can be inferred that she complained to both the school principal, Defendant Gress, and the school's vice principal, Tresa Malligo. We disagree.

14

Plaintiff's deposition testimony indicates that she did not complain to Malligo. Specifically, with regard to Malligo, plaintiff testified as follows:[6]

> Q. Do you know who Tressa Malligo is?
> A. Yes.
> Q. Who is it?
> A. She is another principal, I don't really consider her a principal. I considered her one of my friends in the building.
> Q. Okay. Did you ever complain to her about anything?
> A. I didn't really complain, I talked
> Q. You didn't tell her about any of these sexually-related things that you're telling us about; did you?
> A. I have, but it wasn't really like a complaint. Me and her would talk everything out. So I consider it a talk or a conversation, not a complaint.
> Q. Did you want her to do anything for you when you were talking to her, or did you just consider her a friend to talk things out with?
> A. I just considered her a friend to talk things out with.
> . . .
> Q. Okay. Of the incidents that you've described so far today, which ones did you talk to her about?
> A. The cursing was one. The mean names was one. And I went to her when - - with the [J.N.] situation, being pinned up in the corner.
> Q. Did you want her to do anything?
> A. There was nothing really she could do about the cursing and the name calling, but she did call [J.N.] down and talked to him . . ..

---

[6]The questions, "Q", were asked by defense counsel and the answers, "A" ,were provided by plaintiff.

15

> Q. Other than those things that you just identified, did you tell Tresa Malligo about anything else that you thought was inappropriate?
> A. I'm not sure.

(Doc. 147-11, Pl. Dep. at 109-111).

With regard to the principal of the school, John J. Gress, plaintiff indicated that she went to talk to him five times in tenth grade, fifteen or more times in eleventh grade and no times in twelfth grade. (Pl. Dep. 22-24). At her deposition, she stated as follows:

> Q. [T]he first time you went to see Mr. Gress to complain about something, what did you complain about?
> A. I don't remember.
> Q. The second time you went to Mr. Gress to complain about something, what did you complain about?
> A. I don't remember. All I remember is that several times I went down because of being in the wrestling room, so I talked to Mr. Gress about everything.
> Q. But you don't remember any of the specifics?
> A. No.
> Q. Do you remember specifically what you said to him?
> A. I know some of the things I would complain about is the cursing in the room and the name calling in the room. That was one fo the big ones I would complain about, because I didn't really like that.
> Q. What else do you remember telling him about other than cursing in the room and name calling in the room?

16

> A. I don't remember.
> Q. Do you remember any specifics, other than complaining about the cursing in the room and the name calling in the room?
> A. No.
> Q. And is this true for both 10th grade and 11th grade?
> A. Yes.
> . . .
> Q. Okay. What else do you remember him saying on these - - - ? And I'll combine it. You said it was 15 plus times in 11th grade and five - - no more than five in 10th grade. So 20 plus times total. What did he say he would do about it, if anything?
> A. He said he'd talk to Mark Getz about it, but I'm not sure if he did because he's usually really busy.
> Q. He meaning Mr. Gress?
> A. Yes.

Pl. Dep. at 26-28.

Based upon these facts, plaintiff at best has evidence that she complained to Defendant Gress and Malligo about name calling and cursing, which would not put the school on notice to the sexual harassment claims. Thus, even if plaintiff had alleged facts to support a sexual harassment claim, she did not plead facts of notice to the school district.

**Conclusion**

For all the reasons set forth above, judgement will be granted to the defendants and against the plaintiffs. The claims against the moving

defendant by C.M. fail based upon the reasoning set forth in the accompanying opinion disposing of Defendant Getz's motion for summary judgment.  Plaintiff A.M.'s claim fails because based upon a totality of the circumstances and after having reviewed all the evidence, including the depositions of various individuals, she has not established a cause of action for sexual harassment under Title IX.  The court, however, does not condone in any way, the crude and vulgar language allegedly used by the school officials in this case.  And while the alleged language does not rise to the level of a federal cause of action, no student, male or female should be subjected to such treatment.  The schools are left with the responsibility to remain vigilant and uphold the dignity of those entrusted to their care whenever such situations arise by fully investigating and taking remedial action.

**Date: April 15, 2016**              **s/ James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **UNITED STATES DISTRICT COURT**